# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| STEVEN CANTRELL,<br><br>    Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Respondent. | Case No. 1:12-cv-00464-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is Petitioner Steven Cantrell's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's final decision to deny his claim for Supplemental Security Income benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

In July of 2009, Steven Cantrell ("Petitioner" or "Claimant") applied for disability insurance benefits, alleging that he became disabled on June 20, 2000. AR 129–30. His date last insured is March 31, 2002 (AR 44), so in order to be entitled to benefits he must demonstrate a disability—severe enough to prevent him from working—existed between June 20, 2000 and March 31, 2002.

**MEMORANDUM DECISION AND ORDER - 1**

Petitioner's claim was initially denied and denied again on reconsideration. AR 71–72, 91. Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On November 4, 2010, ALJ John T. Molleur held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Barbara Beehner-Kane, appeared and testified. (AR 19). A vocational expert, Anne F. Aastum, and the claimant's mother, Debra June Olive, also appeared and testified at the hearing. *Id*.

On December 8, 2010, the ALJ issued a decision, denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. (AR 19–33). Petitioner timely requested review from the Appeals Council on December 8, 2010, and submitted new evidence for the Council's review. (AR 1). On July 11, 2012, the Appeals Council denied Petitioner's request for review (AR 1), making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that the ALJ did not support his decision, particularly by failing to properly (1) consider a treating physician's opinion and (2) support findings that Petitioner failed to follow medical advice and had a gap in medical treatment. *See* Pet.'s Br., p. 6 (Dkt. 15).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d

**MEMORANDUM DECISION AND ORDER - 2**

1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). That is, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance of evidence, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony, *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not

**MEMORANDUM DECISION AND ORDER - 3**

substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b),

416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner had not engaged in substantial gainful activity since the alleged onset date. (AR 22).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: Type 1 Diabetes Mellitus and Psoriasis. (AR 22).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed

**MEMORANDUM DECISION AND ORDER - 5**

impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id*. Here, the ALJ concluded that Petitioner does not have an impairment (or combination of impairments) that meets or medically equals a listed impairment (AR 22).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner is capable of performing light work, except he is unable to climb ladders, ropes, or scaffolds, and can only occasionally balance. He also could operate foot controls no more than occasionally, is unable to drive, and cannot walk on uneven surfaces or be exposed to extreme cold temperatures or workplace hazards

**MEMORANDUM DECISION AND ORDER - 6**

such as heights and machinery. Finally, Petitioner requires the ability to alternate positions between sitting and standing throughout his work shift. (AR 25).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, he is not disabled; if the claimant is not able to do other work and meets the duration requirement, he is disabled. Here, the ALJ found that Petitioner was unable to perform any past relevant work. (AR 31). However, considering Petitioner's age, education, work experience, and residual functional capacity, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Petitioner could have performed. (AR 31).

B.  Analysis

Petitioner raises several issues related to the ALJ's determination that Petitioner was not disabled during the relevant time period. That period is a very short window of time in Petitioner's many years of suffering from diabetes and psoriasis, as well as experiencing other medical issues. Thus, although there are several years of medical records to consider, the focus is on June 20, 2000 through March 31, 2002—the time period relevant to the disability decision at issue. Petitioner's conditions progressed to a point where his primary physician opined in 2009 to 2010 that Petitioner could not maintain employment due to his ailments; however, the conditions must have been disabling during the June 20, 2000 through March 31, 2002 time period for Petitioner to qualify for benefits. The ALJ ruled that Petitioner was not disabled during that time period, and for the reasons described below, the ALJ properly supported his decision finding that Petitioner's impairments, although chronic and progressive, were not disabling, as defined by the Social Security Regulations, prior to March 31, 2002.

1.  **The ALJ appropriately considered a treating physician's opinions.**

Petitioner argues that the ALJ "should have considered the opinion and evidence of Dr. Barry Cusack, Petitioner's primary treating physician concerning Petitioner's medical limitations." Pet.'s Br., p. 11 (Dkt. 15). Dr. Cusack's opinions that are referenced by Petitioner date from 2009 through 2010—at least seven years after Petitioner's date last insured. The ALJ considered the opinions, but accorded them little

weight, finding them "irrelevant to the determination as to whether claimant was suffering from a disability" prior to March 31, 2002. AR 29. More specifically, with regard to a March 3, 2009 letter (AR 549–60), the ALJ concluded that "[t]he impairments listed by Dr. Cusack include impairments" Petitioner either did not suffer from prior to the date last insured, "or did not suffer from to the extent he did when the letter [written years later] was authored." AR 29. Similarly, the ALJ found that a letter from Dr. Cusack dated August 23, 2010—opining that the claimant was "unable to work at the present time" due to several progressive, chronic medical conditions, AR 827—"offers no information or opinion regarding the presence or severity of claimant's impairments for the time relevant to this decision," AR 29.[1]

The ALJ recognized that Petitioner's impairments were chronic and progressive, but found "there is no logical basis to infer that limitations present in 2008 and later were present at the same level six years earlier." Significantly, as the ALJ noted, the "record does not contain any opinions from treating or examining physicians indicating that the claimant had limitations greater than those determined in this decision *prior to the claimant's date last insured*." AR 30 (emphasis added).

---

[1] Petitioner acknowledges that one of Dr. Cusack's letters "clearly" sheds "little light on Petitioner's medical state prior to [his date last insured]," but argues that it demonstrates the chronic and progressive nature of Petitioner's conditions. Pet's Br., p. 12 (Dkt. 15). As discussed throughout this Order, the ALJ agreed that Petitioner suffers from chronic and progressive conditions, but he concluded that such conditions were not disabling *prior to the date last insured*. *See, e.g.*, AR 30.

**MEMORANDUM DECISION AND ORDER - 9**

Thus, although a treating physician's medical opinion is entitled to special consideration and weight, here the ALJ provided specific and legitimate reasons, supported by substantial evidence in the record, to support his decision as to the proper consideration and weight to give to Dr. Cusack's opinions.  *See Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989).

2. **The ALJ appropriately considered Petitioner's treatment records and any misapprehension about the treatment Petitioner received after his date last insured is harmless.**

Petitioner argues that "the ALJ's mistaken belief [that] Petitioner's impairments were not perceived to be sufficiently severe prior to DLI, is not based upon substantial evidence."  Pet.'s Br., pp. 7–8 (Dkt. 15).  The ALJ found that the "records clearly indicate that during the time period relevant to this determination [from June 2000 through March 2002], claimant's impairments had not reached a severity which limited his ability to function beyond" the assessed RFC of light work with some restrictions.  AR 26.  As part of his RFC assessment, the ALJ considered that "[t]here is a gap in treatment, from approximately April, 2002, until approximately June, 2008, where claimant's treatment activity appears to be limited to obtaining prescription refills."  AR 26.  The ALJ made these statements as part of his conclusion that, although "[t]here is no dispute that claimant has suffered from uncontrolled diabetes mellitus and psoriasis since [the] alleged onset date," prior to his date last insured "it had not reached disabling severity."  AR 26.

Petitioner argues that there was no gap in treatment from April of 2002 to June of 2008 and submitted additional medical records from this time period to the Appeals Council on appeal from the ALJ's decision. These records detail more significant treatment activity from 2002 to 2008 than the records submitted to the ALJ. *See* AR 963–80. The Appeals Council considered the records but found the "information does not provide a basis for changing" the ALJ's decision. AR 1–2. The Court agrees that the ALJ's disability determination was not based solely on a perceived gap in treatment and, therefore, the additional records Petitioner submitted did not necessitate reversal of the ALJ's decision.

If the ALJ's decision was not supported by substantial other evidence, then remand would be appropriate. Here, however, other substantial evidence supported the ALJ's decision. In addition to mentioning a perceived "gap" in treatment, the ALJ noted that during the relevant time period Petitioner was not facing the level of complications shown in more recent records, and the ALJ referenced several medical records in support of that conclusion. *E.g.*, AR 26–27 (describing that Petitioner "exhibited intact cranial nerves, strength of 5/5, normal muscle tone and normal gait" during a 2000 neurological exam; a foot care nurse during the relevant time period found no history of foot ulceration; and the treatment provided for possible foot complications was an exam and education). The ALJ also considered opinions and records from 2009 through 2010 and made specific mention that by 2009 Petitioner's neuropathy had progressed to the point that he was diagnosed

with mild, non-prolific diabetic retinopathy. Of significance, however, as explained by the ALJ, this "diagnosis was not established until well after claimant's date last insured, and there is no evidence that it existed during the time prior to claimant's date last insured." Instead, the neuropathy progression "occurred well after the date last insured". AR 27; *see also* AR 29–30.

The ALJ also relied on his finding that Petitioner's "adherence to treatment recommendations has not been indicative of a person who is disabled." AR 29. Petitioner argues that the ALJ "failed to develop the record to support a determination that Petitioner had a disabling impairment which was amenable to treatment [and] could be expected to restore Petitioner's ability to work." Pet.'s Br., p. 8 (Dkt. 15). However, the ALJ considered Petitioner's imperfect compliance with provider recommendations as part of his *credibility* determination, not as a basis for finding that Petitioner was not disabled because treatment could restore his ability to work. In the next sentence after the ALJ commented about Petitioner not following treatment recommendations, the ALJ stated that "[a]n unexplained or inadequately explained failure to seek treatment of follow a prescribed course of treatment *can cast doubt on a claimant's sincerity*." AR 29 (emphasis added). Thus, the ALJ was not relying on the imperfect treatment or any gap in treatment to find that Petitioner was not under a disability, but rather as a reason to find Petitioner not fully credible about the extent of his limitations.[2] *See* AR 28 (finding that

---

[2] Petitioner was not denied benefits based solely on noncompliance with prescribed medical treatment, and the policy expressed at Social Security Ruling 82-59 is not applicable here. *See* Pet.'s Br., pp. 10–11 (Dkt. 15); SSR 82-59, 1982 WL 31384, *1 (stating that the policy

**MEMORANDUM DECISION AND ORDER - 12**

Petitioner's "impairments could reasonably be expected to cause the alleged symptoms, however, the [Petitioner's] statements concerning the intensity, persistence and limited effects of these symptoms are not credible to the extent they are inconsistent with [the RFC"). And, this is an appropriate consideration in making a credibility determination. *See Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007) (noting that "unexplained, or inadequately explained, failure to seek treatment" may be the basis for an adverse credibility finding).

Petitioner points to medical records demonstrating that his diabetes was difficult to control during the relevant time period as evidence that he was disabled during the relevant time period. *See* Pet.'s Br., p. 9 (Dkt. 15). Although these records demonstrate that Petitioner's diabetes was difficult to manage, other evidence in the record supports the ALJ's view that Petitioner's compliance was imperfect and his impairments were not disabling during the relevant time period. *See* AR 610 (referred for diabetic education; discussed need for exercise and better diet; noted Petitioner needs better blood sugar control); AR 616 (provider noted "compliance has been imperfect" and that the frequent instances of blurred vision are related to poor diabetic control and not diabetic

---

applies when "[a]n individual *who would otherwise be found to be under a disability*, but who fails without justifiable cause to follow treatment prescribed by a treating source *which the Social Security Administration (SSA) determines can be expected to restore the individual's ability to work*, cannot by virtue of such "failure" be found to be under a disability") (emphases added). *Compare Nunley v. Barnhart*, 296 F.Supp.2d 702, 703–04 (W.D.Va. 2003) (requiring the ALJ to provide the petitioner with "a full opportunity to express the specific reasons for his decision not to follow the prescribed treatment" when the ALJ relied solely on the noncompliance to deny benefits, *after* determining that the petitioner's conditions met or equaled a listing, which would otherwise entitle the petitioner to benefits).

**MEMORANDUM DECISION AND ORDER - 13**

retinopathy); AR 650 (Petitioner did not show up for his diabetic education); AR 563 (Petitioner declines diet counseling); AR 554 (Petitioner "takes a supplement . . . at bedtime despite being advised to avoid the practice"); AR 558 (Petitioner takes insulin but then "forgets to eat and develops hypos" and was advised to take insulin immediately after eating if he is unsure when he is going to eat); AR 567.[3]

It is the role of the trier of fact, not this Court, to resolve conflicts in the evidence. *Richardson v. Perales*, 402 U.S. 389, 400 (1971). If the evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Accordingly, the ALJ properly supported his determination that Petitioner's impairments had not reached a disabling level prior to his date last insured and the additional records from after the date last insured (provided to the Appeals Council), although they provide additional evidence about the progression of Petitioner's limitations during the years after Petitioner's date last insured, do not undermine the ALJ's determination. Additionally, any error by the ALJ in considering that there was a "gap" in treatment, was harmless because other evidence supported his credibility and ultimate disability determinations. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,

---

[3] *See also* AR 563–65 (describing Petitioner's "hit or miss" use of Enbrel to control his psoriasis and noting Petitioner should "get serious about the program or forget it"); AR 25 (noting flare ups with psoriasis "were due to medication non-compliance"). The Court is aware that the record also contains instances where the treating physician made note that Petitioner was using Enbrel as prescribed, and that his psoriasis responded well as a result; however, such notations are most often in the context of comparing how much less of a problem he had with psoriasis when he was taking the medication, than when he was not taking it as prescribed.

**MEMORANDUM DECISION AND ORDER - 14**

1195–97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid); *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008).

>    3.  **The ALJ properly supported his decision finding that Petitioner was not disabled during the relevant time period.**

Petitioner argues that the ALJ should have (1) considered his vision problems, calls for emergency medical assistance due to wide blood sugar fluctuations, and difficulty concentrating, and then (2) made a finding that the Petitioner could not perform the work identified by the vocational expert as available to him, because of these limitations. Pet.'s Br., p. 15–16 (Dkt. 15). Although the ALJ did not specifically discuss that Petitioner had, on occasion, called for emergency medical assistance, and that he testified he experienced some difficulty concentrating, the ALJ considered the limitations that were supported by the medical record. For instance, the ALJ discussed that Petitioner's "blurred vision was determined to be related to his poor diabetic control rather than diabetic retinopathy at the time relevant to this decision," AR 26 (citing AR 649), and that Petitioner reported his blurred vision was "occasional" and any bouts of blurred vision did not impact his ability to perform certain work activities because "he was able to complete a college degree." AR 27. The ALJ also discussed Petitioner's "uncontrolled diabetes" and "low" blood sugar. AR 27 ("[C]laimant's conditions with respect to his uncontrolled diabetes and peripheral neuropathy worsened over time"). Moreover, the ALJ acknowledged that, as early as February of 2000, medical records indicated that Petitioner's diabetes was not well controlled, but found that Petitioner was

**MEMORANDUM DECISION AND ORDER - 15**

not facing at that time the same degree of complications that were described in the most recent medical records from 2009–10. AR 26.

Petitioner points to other evidence—his testimony, his mother's testimony that Petitioner became confused when his blood sugar dropped, and medical entries regarding Petitioner's emergency medical assistance—to further argue that his conditions were disabling. The ALJ was not persuaded and appropriately relied on other medical records, and Petitioner's imperfect compliance with his physician's suggestions for helping him control his conditions, in making his RFC determination. *See* AR 29. Further, the ALJ appropriately relied on Petitioner's activities, which the ALJ found "are not limited to the extent one would expect," given his "allegations of disabling symptoms and limitations." AR 29. The ALJ noted that Petitioner, well after the date last insured, still participated in activities such as camping and mowing his lawn, "which indicates that he retained good locomotion." AR 24. The ALJ considered Petitioner's complaint that numbness in his hands interfered with his ability to hold a steering wheel, but found this undermined by Petitioner's report that he remained able to drive well enough to pick up his children from school, "indicating that even recently his motor skills remained more intact than he reported." AR 24. The ALJ also noted that Petitioner's blurred vision did not appear to have impacted his ability to function or perform certain type of work because he went to college in 2001, obtained his degree in 2005, interned for a bail-bond office, and continued to drive. AR 27–28; *see also* AR 46–47, 523, 572, 611. Because Petitioner's disease is progressive, his ability to go to college, work as in a bail-bond office (whether or not for

pay), and engage in outdoor activities, at times well after the end of the relevant time period, provide support for the ALJ's credibility determination. *See Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (explaining that when "a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities").

While the ALJ could perhaps have rationally found that Petitioner was disabled, or more limited in his ability to work, the information relied on by the ALJ in formulating the RFC, and the vocational expert's testimony finding sufficient jobs in the national economy for someone with the assessed RFC, provided a rational basis for finding that during the relevant time period Petitioner could perform available light work, with certain restrictions to account for some of Petitioner's limitations, and that such work was available. *See Batson v. Commissioner*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, we must defer to the ALJ's conclusion.").

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *See Allen*, 749 F.2d at 579; *Vincent ex. Rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 17**

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions with respect to most of the issues, despite the fact that such evidence may be susceptible to a different interpretation. Indeed, in this case, this Court might well have found differently if was to decide the case *de novo*. However, such a statement is drawn from a cold record, and it is not this Court's role to alter the ALJ's decision without some appropriate basis under the law for doing so, consistent with its role as a reviewing court only. Here, the ALJ's decision as to Petitioner's alleged disability is based on proper legal standards and supported by substantial evidence. Therefore, the Court concludes that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

Accordingly, the Commissioner's decision is affirmed.

# V. ORDER

Based on the foregoing, Petitioner's Petition for Review (Dkt. 1) is DENIED, the decision of the Commissioner is AFFIRMED, and this action is DISMISSED in its entirety, with prejudice.

DATED: **August 26, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge